FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 07, 2020

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

JUDY P.,

    Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant.

No. 1:18-CV-03219-RHW

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF

Nos. 12, 14. Plaintiff brings this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the Commissioner of Social Security's final decision, which

denied her application for Social Security Disability Insurance under Title II of the

Social Security Act, 42 U.S.C. §§ 401-434. After reviewing the administrative

record and briefs filed by the parties, the Court is now fully informed. For the

---

[1]Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

reasons set forth below, the Court **GRANTS in part** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, and **REMANDS** the matter to the Commissioner for additional proceedings.

## I.     Jurisdiction

Plaintiff filed her application for Social Security Disability Insurance on February 22, 2014. AR 251. She alleged a disability onset date of April 1, 2010. AR 494. Plaintiff's application was initially denied on April 25, 2014, AR 278-88, and on reconsideration on September 24, 2014, AR 299-303.

Administrative Law Judge ("ALJ") Tom L. Morris held hearings on April 12, 2016, January 31, 2017, and August 24, 2017 and heard testimony from Plaintiff, vocational expert Leta Berkshire, vocational expert Thomas Polsin, and medical expert Minh Vu, M.D. AR 144-245. At the August 24, 2017 hearing, Plaintiff amended her date of onset to December 1, 2015. AR 209. On September 28, 2017, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 56-71. The Appeals Council denied Plaintiff's request for review on September 19, 2018. AR 1-5. Plaintiff sought judicial review by this Court on November 19, 2018. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a). If the claimant cannot engage in her previous occupations, the ALJ proceeds to step five and the burden shifts to the Commissioner to demonstrate that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 388-89 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the

Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it

is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 51 years old at the amended date of onset. AR 494. At application, the alleged conditions limiting her ability to work included stage III chronic kidney disease, cardiovascular surgical bypass, diabetic insulin dependent over 40 years, retinopathy surgical laser procedures, peripheral neuropathy in all extremities, depression gastroparesis, asthma, GERD, and thyroid disorder. AR 518. Plaintiff completed high school in 1982. AR 519. At the time of application, Plaintiff stated she had past work in accounting. AR 519.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from the amended date of onset, December 1, 2015, through the date last insured, December 31, 2015. AR 56-71.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended date of onset, December 1, 2015, through the date last insured, December 31, 2015. AR 59 (citing 20 C.F.R. § 404.1571 *et seq*.).

**At step two**, the ALJ found that Plaintiff had the following severe

impairments: ischemic heart disease/coronary artery disease, diabetes mellitus, peripheral neuropathy (including carpal tunnel syndrome), and left middle trigger finger (citing 20 C.F.R. § 404.1520(c)). AR 59.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 62 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform work with the following limitations:

> [T]he claimant had the residual functional capacity to lift and carry ten pounds occasionally and frequently. She could stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday. She could sit (with normal breaks) for a total of six hours in an eight-hour workday. She could never kneel, crouch, crawl, or climbing ladders, ropes, or scaffolding. She could occasionally stoop and climb ramps and stairs. She could frequently balance. She needed to avoid concentrated exposure to wetness, humidity, extreme temperatures, pulmonary irritants, or hazards. She could frequently finger with her left hand. She could frequently handle bilaterally. She was not able to perform at a production rate pace (e.g. assembly line work where pace is mechanically controlled) but could perform goal-oriented work. She would have been off-task up to ten percent of her eight-hour workday.

AR 64-65. The ALJ found Plaintiff had past relevant work as an accounting clerk and she was able to perform this past relevant work. AR 71.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error

and not supported by substantial evidence. Specifically, she argues that the ALJ erred by: (1) failing to make a proper step two determination; (2) failing to properly weigh the medical opinions; (3) failing to properly consider Plaintiff's symptom statements; and (4) failing to make a proper step four determination.

## VII. Discussion

### A. Step Two

Plaintiff challenges the ALJ's step two determination by asserting that he failed to properly consider Plaintiff's kidney disorder, diabetic retinopathy, and gastrointestinal (GI) disorders. ECF No. 12 at 4-9.

Step two addresses whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). To establish a severe impairment at step two, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521. "[O]nce a claimant has shown that [she] suffers from a medically determinable impairment, [she] next has the burden of proving that these impairments and their symptoms affect [her] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152,

1159-60 (9th Cir. 2001). At step two, the burden of proof is on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

### 1.  Kidney Disorder

The ALJ found that Plaintiff's kidney disorder was a medically determinable impairment, but found that it was not severe, stating it "did not cause functional limitations through the end of 2015." AR 60. However, this finding is not supported by substantial evidence. At the August 24, 2017 hearing, Dr. Vu testified that Plaintiff's chronic kidney disease was a severe medically determinable impairment as of December 2015. AR 215-17, 233. Dr. Vu pointed out a creatine range up to 1.3 in April 2015 and a glomerular filtration rate (GFR) of 39 milliliters per minute in March 2016, stating that this equaled a 50% function of the kidney. AR 216-17. He explained that once the kidney function gets down to 50% of normal, Plaintiff would have less stamina to work. AR 226.

The Court acknowledges that the GFR score Dr. Vu referenced in his

testimony and associated with Plaintiff's reduced kidney function is after the date last insured. However, other evidence in the record indicates Plaintiff had a low GFR score prior to the date last insured. In January 2012, Plaintiff had a creatinine level of 1.2 and an estimated GFR of 54. AR 870. On July 29, 2013, Plaintiff had a creatinine level ranging from 1.10 to 1.42 and a GFR ranging from 42 to 46. AR 613. On November 4, 2013, Plaintiff had a creatinine level of 1.27 and an estimated GFR of 45. AR 684. In August 2014, Plaintiff had a creatinine level of 1.13 and a GFR of 51.17. AR 733, 738. Dr. Vu reviewed these test results and clearly identified Plaintiff's chronic kidney disease as a severe medically determinable impairment prior to the date last insured. AR 233. Therefore, the ALJ's determination that Plaintiff's chronic kidney disease is not severe is not supported by substantial evidence.

The case is remanded for the ALJ to make a new step two determination addressing Plaintiff's chronic kidney disease.

## 2. Diabetic Retinopathy

The ALJ failed to discuss Plaintiff's diabetic retinopathy in his decision, and did not include any vision limitations within the residual functional capacity. AR 59-62, 64-65. The Court acknowledges that the vision testing in the record that establishes Plaintiff's diabetic retinopathy occurred after the date last insured. AR 994 (August 2, 2016 exam showing severe diabetic retinopathy). However, since

the case is being remanded for the ALJ to make a new step two determination, the ALJ shall readdress Plaintiff's diabetic retinopathy and any evidence it was present prior to the date last insured.

### 3. GI Disorders

The ALJ found that Plaintiff's GI disorders were medically determinable, but did not cause any functional limitations and were not severe. AR 60.

At the August 24, 2017 hearing, Dr. Vu testified that Plaintiff's "gastrointestinal or GERD" was a severe medically determinable impairment as of December 2015. AR 233. However, he had previously stated that there were no objective findings for the diagnosis of gastrointestinal reflux disease. AR 220-21. This is conflicting testimony. The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguities. *Andrews*, 53 F.3d at 1039. Therefore, upon remand, the ALJ shall readdress all of Plaintiff's step two alleged impairments, including her alleged GI disorders.

## B. Medical Opinions

Plaintiff challenges the weight the ALJ gave to the opinions of Glenda Petrie, ARNP, Gullermo Rubio, M.D., and Olegario Ignacio, Jr., M.D. ECF No. 12 at 9-14.

### 1. Glenda Petrie, ARNP

On March 29, 2016, Nurse Petrie completed a Medical Questionnaire, in

which she indicated: "I do not believe that this patient is capable of performing <u>any</u> type of work on a reasonably continuous, sustained basis (e.g., eight hours a day, five days a week, or approximately 40 hours per week consistent with a normal work routine)." AR 806. When asked to specify the primary medical diagnosis for the opinion, she stated: "Due to the duration of type – 1 diabetes (45 yrs) and all the complications associated [with] her diabetes, Judy is not able to maintain gainful employment." *Id*. The ALJ gave these statements "minimal weight" for three reasons: (1) it was a "cursory statement of disability without any supporting evidence"; (2) it was "wholly based" on Plaintiff's subjective reporting; and (3) it was unclear if the opinion took into account Plaintiff's lack of compliance with diabetic treatment recommendations. AR 69.

Generally, the ALJ should give more weight to the opinion of an acceptable medical source than to the opinion of an "other source." 20 C.F.R. § 404.1527. For applications filed before March 27, 2017, Nurse Practitioners do not qualify as acceptable medical sources. 20 C.F.R. § 404.1502(a)(7). An ALJ is required, however, to consider evidence from "other sources" who are not acceptable medical sources, 20 C.F.R. § 404.1527(f), "as to how an impairment affects a claimant's ability to work," *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

The ALJ's first reason for rejecting the opinion—that it was a "cursory

statement of disability without any supporting evidence"—is not legally sufficient. Specifically, the ALJ focused on the lack of clinical findings on Nurse Petrie's examination in March 2016 as a reason to discredit the opinion. AR 69. A lack of clinical findings on a standard check-the-box form provided by an "other source" is not by itself a germane reason for discrediting the opinion. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Nurse Petrie expressed her opinion on a check-the-box form on March 29, 2016. AR 806. In an examination report from the same date, Nurse Petrie stated that Plaintiff was in no acute distress at the time of the examination. Tr. 878. However, under the Ninth Circuit's ruling in *Popa*, this alone is insufficient to discredit the opinion.

The ALJ's second reason for rejecting the opinion—that it was based on Plaintiff's subjective reporting—is not legally sufficient. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). "However, when the opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id*. The court in *Ghanim* was discussing the opinion of a treating acceptable medical source. *Id*. Here, the ALJ is addressing the opinion of a treating "other source." However, the ALJ failed to set forth how he concluded the

opinion was more heavily based on Plaintiff's subjective statements and not the medical evidence. Therefore, without some explanation as to how the ALJ concluded the opinion was based more heavily on Plaintiff's subjective reports, his determination is not supported by substantial evidence.

The ALJ's third reason for rejecting the opinion—that it was unclear whether the opinion included Plaintiff's failure to follow prescribed diabetic treatment—is not legally sufficient. The ALJ focused on Plaintiff's failure to test her blood sugar levels at the frequency prescribed by her providers. AR 69 (citing AR 751-52, 756) (a February 2, 2014 appointment with Nurse Petrie in which Plaintiff was testing her blood sugars only once per day); AR 748 (a June 24, 2015 appointment with Dr. Hamilton in which Plaintiff was testing her blood sugars 1.6 times per day and had an A1C of 9.6); AR 724 (a June 26, 2014 appointment with Nurse Petrie in which Plaintiff reported testing 8.8 times a day and her A1C was 9.5% but was listed as non-compliant for failing to take her thyroid medication). A review of the evidence demonstrates that when Plaintiff did test her blood sugar levels more frequently, it did not result in improved A1C scores. As demonstrated above, her A1C did not show a great deal of improvement when she was testing at a range of 8.8 times a day or 1 time a day. Additionally, the record shows that in October 2016 when she was testing at 3.9 times per day, her A1C continued to range from 8% to 9%. AR 938. This is significant because she was being instructed

to test four times per day. AR 754. Therefore, despite following prescribed treatment, she did not meet the goal of having an A1C below 7.5. AR 752. As such, the ALJ's implication that Nurse Petrie's opinion is less valid because the severity of Plaintiff's impairments would have decreased with more frequent blood sugar testing is not supported by substantial evidence. Therefore, the ALJ erred in weighing Nurse Petrie's opinion. The case is remanded for the ALJ to further address the opinion.

### 2. Gullermo Rubio, M.D., and Olegario Ignacio, Jr., M.D.

Plaintiff challenges the significant weight the ALJ assigned to the opinions of non-examining acceptable medical sources, Dr. Rubio and Dr. Ignacio. ECF No. 12 at 13-14.

The case is being remanded to further address the opinion of Nurse Petrie. Therefore, the ALJ will readdress the medical opinions of Dr. Rubio and Dr. Ignacio on remand.

### C. Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's treatment of her symptom statements. ECF No. 12 at 14-19.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); S.S.R. 16-3p. Therefore, because the case is being remanded for the

ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

**D.     Step Four**

Because the ALJ erred in his step two determination and in weighing the medical opinions in the record, a new residual functional capacity determination will need to be made. Therefore, a new step four determination is also required upon remand. 20 C.F.R. § 404.1520(a)(4)(iv).

**VIII. REMEDY**

Plaintiff asks the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF No. 12 at 2, 13.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). But where there are outstanding issues that must be resolved before a determination can be made,

and it is not clear from the record that the ALJ would be required to find a claimant

disabled if all the evidence were properly evaluated, remand for further

proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th

Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to

find Plaintiff disabled if all the evidence were properly evaluated. Further

proceedings are necessary for the ALJ to properly address Plaintiff's medically

determinable impairments at step two, to properly consider all the medical

opinions in the record, to properly consider Plaintiff's symptom statements, to

make a new residual functional capacity finding, and to make a new determination

at step four. Additionally, the ALJ will supplement the record with any outstanding

evidence and call medical and vocational experts to testify at a remand hearing.

## IX. ORDER

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED in part.**

2.     Defendant's Motion for Summary Judgment, **ECF No. 14,** is **DENIED.**

3.     This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

///

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 16

4.    Judgment shall be entered in favor of Plaintiff and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

Order, forward copies to counsel, and **close the file**.

**DATED** this 7th day of January, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge